The People of the State of Illinois, *ex relatione* Charles R. Matheny appellants *v.* Mordecai Mobley, appellee.

*Appeal from Sangamon.*

The fair interpretation of the provision of the Constitution of this State, that " The Supreme Court, or a majority of the justices thereof, the Circuit Courts, or the justices thereof, shall, respectively, appoint their own clerks," is that the Court, in contradistinction to a personal authority, is the repository of the trust conferred by the Constitution, and that whenever a clerk has been appointed, the trust is thereby executed, and cannot be resumed or again exercised until a vacancy shall occur in one of the several ways provided by law.

The terms, " the justices thereof," are used only to confer an authority to make an appointment in vacation, as well as in term.

The Constitution gives to the Court the authority to appoint its clerk; but when thus appointed, it fixes no limit to the duration of his office.

A clerk of the Circuit holds his office under the constitution *ad libitum*, until the legislature shall think proper to prescribe the tenure of the office. This it is certainly competent for the legislature to do.

A judge of a Circuit Court cannot remove a clerk, except for some of the causes pointed out in the statute.

The office of clerk of the Circuit Court is created by the Constitution, and its duration is left undefined ; and, unless its tenure be limited by law, it would be of indefinite duration.

This cause was tried at the July special term, 1835, of the Sangamon Circuit Court, before the Hon. Richard M. Young.

The following proceeds were had in the Court below :

On the 11th day of July, 1835, Stephen A. Douglass, Attorney for the People of the State of Illinois, came into Court and filed

the affidavit of Charles R. Matheney, in the words and figures following, to wit:

" State of Illinois, Sangamon County, sct.,

Charles R. Matheny states on oath, that heretofore, and long prior to the fourth day of May, 1835, he was legally and properly appointed clerk of the Circuit Court of Sangamon county, by the Circuit Court thereof, and was duly sworn, entered into the necessary and proper official bonds required by law to be taken, and was legally possessed and exercised the powers of said office, receiving the emoluments and enjoying the immunities and privileges appertaining to said office, from the time of his said appointment and induction therein, until the 4th day of May, 1835; that from and after his said investment of said office, he never abandoned or forfeited the same, nor was he ever removed or displaced from said office by the judgment of any court, nor has the said Circuit Court, since his said investment of the office aforesaid, as he is advised, (and believes to be true,) been abolished.    He further states, that on the 4th day of May, 1835, a certain Mordecai Mobley, illegally claiming the said office as clerk, under color of a void and illegal appointment as clerk of said Circuit Court, (as he is advised and believes,) made after the 13th of February, 1835, unlawfully usurped, intruded into, and unlawfully held and executed said office of clerk of said Circuit Court, and from and since the 4th day of May, 1835, hath, and still unlawfully held and executed said office of clerk aforesaid, and from and since the 4th day of May, 1835, hath, and still doth unlawfully receive, take, and enjoy the emoluments, rights, and privileges of the office aforesaid, and from and since the 4th day of May, 1835, the said Mobley illegally hath and still doth refuse to allow the said Matheny to hold and execute the said office, or to receive the emoluments, or to enjoy the rights, privileges, and emoluments thereof; and that he is desirous that a rule may be made upon the facts stated herein, on motion of the Attorney for the People of the State of Illinois, in the First Judicial Circuit, upon the said Mobley, to show cause why leave should not be given to file an information in behalf of the People of the State of Illinois, in the nature of a *quo warranto*, upon the relation of the said Matheny against said Mobley, for usurping, intruding, and unlawfully holding and executing said office as aforesaid.                                C. R. MATHENY.

Sworn to and subscribed, this 11th day
    of July, A. D. 1835, before me,
        THOMAS MOFFETT, Jus. Peace."

And moved the Court for a rule to be made on Mordecia Mobley, to show cause, if any he could, why the said Attorney should not

have leave to file an information in the nature of a *quo warranto,* in this Court, in behalf of said People, on the relation of Charles R. Matheny, against said Mobley, for having illegally usurped, intruded into, and unlawfully executed, and still unlawfully executing and holding the office of clerk of the Sangamon Circuit Court; on consideration whereof, it is ordered that said motion be continued till the second day of the next term of this Court.

And afterwards, to wit, on the 14th day of July, 1835, being the regular time of the Circuit Court for Sangamon county, the following motion came on to be heard, viz:

The People, on the relation of
    Charles R. Matheny *v.*         Motion.
    Mordecai Mobley.

This day, Stephen A. Douglass, Attorney for the People of the State of Illinois, in and for the First Judicial Circuit, and on motion grounded upon an affidavit of Charles R. Matheney, filed on the last day of the last special term of this Court, and now here produced,

It is ordered that a rule be made on Mordecai Mobley, now acting as clerk of this Court, returnable to the fourth day of the present term, to show cause, if any he can, why the said Attorney for the People of the said State, should not have leave from this Court to file an information, in the nature of a *quo warranto,* against the said Mobley, (upon the relation of Charles R. Matheny,) for having usurped, intruded into, and illegally holding and execuing the office of clerk of the Circuit Court of Sangamon county, and that a copy of this rule be served upon said Mobley by the sheriff, and returnable to the fourth day of the present term.

And afterwards, to wit, on the 16th day of July, 1835, the said Mobley being in Court, by his attorney, says, That he has no reason to urge why the State's Attorney shall not have leave to file the information as prayed for by him.

Whereupon it is ordered, That the rule heretofore entered in this matter be made absolute, and that leave be given to file the information aforesaid. And the said State's Attorney thereupon exhibited the information which is ordered to be filed, and is in the words and figures following, to wit:

" State of Illinois, Sangamon County, ss.,

In the Circuit Court of said county, July term, 1835, Stephen A. Douglass, State's Attorney of the First Judicial Circuit of the State of Illinois, who prosecutes in behalf of the People of the State of Illinois, on the relation of Charles R. Matheny, of the county of Sangamon aforesaid, comes here into Court and gives the Court to understand and be informed, that on the 14th day

s

of February, in the year one thousand eight hundred and twenty-seven, the said Charles R. Matheny, relator as aforesaid, was regularly and legally appointed clerk of the Circuit Court for the county of Sangamon aforesaid, by the judge of said Court; that the said Charles R. Matheny took the several oaths required by the statute in such case made and provided, and executed bond with security for the faithful discharge of the duties required of him by law, and thereupon entered into and upon the duties of the said office, and was legally possessed thereof and exercised the powers, received the emoluments, enjoyed the immunities and privileges appertaining to the same, and continued to have, hold, and enjoy the said office, and exercise the powers, perform the duties, and receive the emoluments and immunities thereof, from the time of his said appointment and induction therein until the 4th day of May, 1835; that from and after the said appointment, he never resigned, abandoned, or forfeited the said office, nor has the said Circuit Court of Sangamon county, or the office of clerk of said Court, ever been abolished; nor has he, the said Matheny, ever been removed or displaced from said office by the judgment of any court. And on the said 4th day of May, 1835, at the Circuit aforesaid, one Mordecai Mobley, of said county, well knowing the premises aforesaid, did unlawfully usurp the said office of clerk of the Circuit Court of Sangamon county, and enter into and upon the exercise of all the powers and duties of the office of such clerk, and by such unlawful usurpation did, then and there, become possessed of the said office, and of the emoluments, immunities, and privileges appertaining to the said office, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the same people of the State of Illinois.

And the said State's Attorney, on the relation of the said Charles R. Matheny, further gives the Court here to understand and be informed that the said Mordecai Mobley, on the 4th day of May, 1835, at the Circuit aforesaid, did then and there unlawfully hold the office of clerk of the Circuit Court of Sangamon county, and from and since the said 4th day of May, 1835, hath, and still doth unlawfully hold the said office of clerk of the Circuit Court of Sangamon county, and exercise the powers, and receive the emoluments of said office, the said Charles R. Matheny, the relator, being during all the time aforesaid the legal and lawfully appointed clerk of said Court, as stated in the first count in this information, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the same People of the State of Illinois.

And the said State's Attorney, upon the relation of the said Charles R. Matheny, further gives the Court here to understand and be informed, that on the 10th day of May, 1835, at the Cir-

cuit aforesaid, the said Mordecai Mobley did unlawfully execute the office of clerk of the Circuit Court of Sangamon county; and from and since the said 10th day of May, 1835, hath, and still doth execute the office aforesaid, without any lawful authority, one Charles R. Matheny being on the said 10th day of May, 1835, the clerk of said Court, and still continuing to be and remain such clerk, as stated and alleged in the first count of this information, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the same People of the State of Illinois.

And the said State's Attorney, upon the relation of the said Charles R. Matheny, further gives the Court here to understand and be informed, that on the 10th day of May, 1835, at the Circuit aforesaid, the said Mordecai Mobley did unlawfully intrude into the office of clerk of the Circuit Court of Sangamon county, and by such unlawful intrusion, did, then and there, become possessed of the said office of clerk of the Circuit Court of Sangamon county, and of the emoluments and immunities of said office, and hath hitherto continued to have and to hold, and exercise the powers and duties of such clerk, and to receive the emoluments of said office, the said Charles R. Matheny being at the time of the intrusion aforesaid, and still continuing to be, the clerk of said Court, as stated in the first count of this information, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the same People of the State of Illinois.

STEPHEN A. DOUGLASS, State's Attorney.

And afterwards, to wit, on the 18th day of July, 1835, the following cause came on to be heard, viz.

The People, on the relation of ⎫
    , Charles R. Matheny *v.* ⎬    ON INFORMATION.
    Mordecai Mobley. ⎭

This day came, as well the People aforesaid, by their attorney, as the defendant; and the said defendant filed his plea herein, in the words following:

And the said defendant, by Stone, his counsel, comes and defends the wrong and injury, when and where, &c., and says the People, their information aforesaid to have and maintain, ought not, because, he says, that under the provisions of an act of the General Assembly of the State of Illinois, entitled " *An act to provide a uniform mode of holding Circuit Courts,*" approved 7th January, 1835, Stephen T. Logan was elected judge of the Circuit Court of Sangamon county, and was regularly commissioned and sworn into office; that according to the laws of the land, the said Stephen T. Logan, as such judge, had full power

. and lawful authority to appoint a clerk of the Circuit Court of
said county, and having such power and authority, he, the said
Logan, on the 25th day of April, 1835, appointed the said de-
fendant clerk of the Circuit Court of Sangamon county, which
appointment is in the words following :

Know all men, by these presents, That I, Stephen T. Logan,
Judge of the First Judicial Circuit, in the State of Illinois, do, by
these presents, constitute and appoint Mordecai Mobley clerk of
the Circuit Court for the county of Sangamon, being one of the
counties comprised within the said Judicial Circuit. In testimony
whereof, I have hereunto set my hand and seal, at Springfield,
in the county of Sangamon, this 25th day of April, 1835.

                                        STEPHEN T. LOGAN, [L.S.]

By virtue of which said appointment, he, the said defendant,
entered into the office aforesaid, (having taken the oaths and exe-
cuted the bond as required by law,) as he lawfully might do, that
he hath, and doth hold the said office, exercised the powers, per-
formed the duties, and received the emoluments and immunities
of the office aforesaid, under and by virtue of the appointment
aforesaid, as by the laws of the land he has a right to do, all
which he is ready to verify, &c., wherefore, &c.

                                        STONE, Deft.'s Counsel.

To which the attorney for the People filed a demurrer.

And the judge of this Court having stated that he had formed
an opinion upon the case, which was unfavorable to the defend-
ant, and that he was therefore unwilling to decide the case, it is
agreed between the parties, that judgment be entered against the
right of the relator, subject to the right of appeal.   Whereupon,
by consent of the parties, as aforesaid, it is considered and ad-
judged by the Court, that the demurrer to the defendant's plea
be overruled ; and neither the People or the said relator making
any other or further answer to the plea aforesaid, it is consider-
ed and agreed by the Court that the defendant be, and he is
hereby acquitted of the charges alleged against him in the in-
formation, and that the said relator take nothing thereby ; where-
upon, by leave of the Court, the said Charles R. Matheny is
permitted to prosecute an appeal from this judgment to the
Supreme Court of the State, upon his executing a bond to the
defendant, in the penalty of one hundred dollars, with Wharton
Ransdall, Edward Mitchell, Francis Philips, Archer G. Herndon,
and Janus F. Reed, or either of them, as surety, conditioned that
he will well and truly prosecute the appeal ; and in case the
judgment of this Court is affirmed, that he will pay all costs
which may be adjudged against him.   The bond to be executed

before the clerk of this Court, within forty days, and which bond was executed and filed on the 10th August, 1835."

STEPHEN A. DOUGLASS, State's Attorney, WILLIAM THOMAS and CYRUS WALKER, for the appellants.

HENRY EDDY and JESSE B. Thomas, jr., for the appellee.

WILSON, Chief Justice, delivered the opinion of the Court:

The pleadings in this case show that Matheny was clerk of the Circuit Court of Sangamon county, on the 3d day of May, 1835; and that in pursuance of an act of the legislature entitled " *An act to establish a uniform mode of holding Circuit Courts,*"(1) passed on the 7th of January, 1835, S. T. Logan was elected judge of the Circuit Court of Sangamon county, and in virtue of said office, appointed M. Mobley, the appellee, clerk of the Circuit Court of said county.

It becomes necessary in this case, to enquire what powers in relation to the appointment of clerks, are delegated to Circuit Courts, or the judges thereof, by the Constitution and laws of this State; and, also, by what tenure the clerks of the Circuit Court appointed by virtue of such authority, hold their office.

By the 4th Article and 6th section of the Constitution of this State, it is provided that "The Supreme Court, or a majority of the justices thereof, the Circuit Courts, or the justices thereof, shall, respectively, appoint their own clerks." Is the power of appointment conferred by this provision of the Constitution, a personal trust or authority, which may be exercised by every new incumbent upon entering into the office of judge? or, Is it not a power of appointment confided to the Court, or the judge as the organ or minister of the Court, and if so, has it in the present instance been exercised in such a case, and in such a manner, as is warranted by the Constitution and laws of this State? From a fair interpretation of this provision of the Constitution, it is clear that the Court, in contradistinction to a personal authority, is the repository of the trust conferred by the Constitution; and that whenever a clerk has been appointed, that the trust or authority is thereby executed, and cannot be resumed, or again exercised, until a vacancy shall occur in one of the several ways provided by law. The terms of the Constitution " the justices thereof" are used in connexion with the Circuit Court, only to confer an authority to make an appointment in vacation as well as in term time, in order that the administration of justice might not be delayed for the want of so important an officer of the Court as a clerk. In either case the judge acts as the minister of the law. If a different construction should prevail, and the power of appointment should be regarded as personal to the judge, it would

(1) Acts of 1835, 150; Gale's Stat. 182.

s*

necessarily attach to every judge immediately upon his appointment, and upon the happening of a vacancy in the office of judge, the clerkships in all the counties of his Circuit, would also become vacant; and upon the same principle, when Circuit judges should exchange Circuits, as by law they are authorized to do, the office of clerk would become vacant by such exchange, in all the counties in their respective Circuits, because the judge presiding in the Circuit Court of a county, is for the time being the judge of that Court; and if the clerk is the officer of the judge, and not of the Court or law, he would have to be appointed upon every such exchange, and until the appointment was made, the administration of justice would be suspended. Such a construction of the Constitution, it is believed, is not warranted either by its language or spirit, and would in its consequences be fraught with great inconvenience to the public.

The act of 1835 is relied upon as vesting in the judges elected under it, an authority to appoint the clerks in their respective counties. This is undoubtedly true wherever the offices were vacant; but to sustain the position with respect to the case before the Court, it must be shown that by this act, the present Circuit Courts were created, and that the law which created those in existence at the time of its passage, was repealed, and the Courts thereby abolished. From an examination of that statute, it will be apparent that great caution has been used to avoid such a result. The first section of the act provides for the election of five Circuit judges in addition to the one then in existence, whose duty it should be to preside in the several Circuit Courts now or hereafter authorized and required to be held in the several counties in this State. The third section repeals so much of the law then in force, as required the judges of the Supreme Court to hold Circuit Courts. It will be perceived that the existence of Circuit Courts is expressly recognised by the language of this act, and the requisition to hold as well the Circuit Courts which might hereafter be created, as those then in existence, was intended to apply to, and provide for, the administration of justice in such new counties as might thereafter be created and organized. No part of the act repeals the law of 1829,(1) by which the Circuit Courts then in existence were created. It goes no farther than to assign to the judges elected under it, the duties before that time performed by the judges of the Supreme Court. The Circuit Court remained the same in name, jurisdiction, and character. It is contended by counsel that Matheny's appointment to the office of clerk is invalid, as not having been made by the Circuit Court of Sangamon county, because the judge who at the time of his appointment presided in that Court, was a judge of the Supreme Court. This argument is refuted by a reference to

(1) R. L. 147; Gale's Stat. 158.

that provision in the Constitution which enjoins upon him the performance of Circuit duties when required by the legislature, and the law of 1829 making the requisition, which gives him the name, and clothes him with the authority, of a Circuit judge. It has also been attempted to assimilate the powers of the judges appointed under the act of 1835, to those of the judges of the Supreme Court under the law of 1827,(1) by which they were required to perform Circuit duties, and under which they re-appointed their clerks. The cases, however, are essentially different. The act of 1827 abolished the Circuit Courts then in existence, by repealing the law which created and brought them into being, and with the expiration of that office, the official character and existence of the judge, together with that of the clerk of the Court, also expired at the same time;—and when, by the authority of the legislature, Circuit Courts were again called into being, those Courts were authorized by the provision of the Constitution referred to, to appoint their clerks to the newly created offices. The act of 1835, I have attempted to show, did not abolish or change the character of the Circuit Courts; it only substituted for the discharge of the duties of the office, one set of judges in place of another. No inference, then, in favor of the legality of the appointment of Mobley under the law of 1835, can be drawn from the practice of the Courts under the law of 1827. But, on the contrary, if any conclusion is to be drawn from the practice of the Courts, and if such practice is to be regarded as having given a construction to the Constitution, and the powers and duties of the judges in relation to the appointment of clerks, it will settle the question in favor of the relator. By the Constitution, the commissions of the judges appointed prior to the year 1824, expired at that period, and when the judges elected to succeed them, came into office, they were of opinion that inasmuch as the Court remained the same, the office of clerk was not vacated by a change of judges, and consequently no new appointment was necessary to continue in office the present incumbent, nor has any such been made.

This view of the subject is strengthened by an enquiry into the tenure by which a clerk of the Circuit Court holds his office. The Constitution gives to the Court the authority to appoint its clerk, but when thus appointed, it fixes no limit to the duration of the office. The clerk, then, is to be considered as holding his office under the Constitution *ad libitum*, until the legislature shall think proper to prescribe the tenure. This it is certainly competent for it to do, and under a like provision of the Constitution with respect to the Auditor and Attorney General, it has exercised this authority by fixing the term of service of those officers. It has also legislated upon the subject of clerk, and

(1) R. L. of 1827, 119–124.

though it has not defined the tenure of the office specifically, it has done so to some extent, by prescribing the tenure upon which its duration is to depend.    Those tenures are the renewal of the bond at stated periods, his residence at the county seat, and various others.  But a vacancy in the office of Judge of the Court, is not one of the causes enumerated, which will vacate the office of clerk, or for which he may, by application to the Court, be removed from office.    It is not competent, then, when the Constitution has left the tenure of an office without limit, for the Court to prescribe limits ;. nor is it their province when the legislature has specified the causes of forfeiture of, or removal from, office, to say that other causes than those enumerated, shall have that effect.    The consequence of such a latitude of construction, would be to change the tenure of an office, and make its duration depend not only upon the limits fixed by law, but upon such others as the Court might think it good policy to superadd. From a review of all the points involved in this case, I am of opinion that the order of the Circuit Court of Sangamon county, appointing M. Mobley clerk of that Court, was without authority and erroneous; because the power of appointment is delegated to the Court, and the exercise of that power limited to the filling of offices which may be created, or which may become vacant by any of the various ways known to the law ; and because the relator had been legally appointed to the office which he claims, and the appointment had not expired by operation of any law of this State, nor has he been removed for any omission or act in violation of the law prescribing his duties, and defining the tenure of his office.

It is therefore ordered by the Court, that the judgment of the Court below be reversed, and that the relator, Charles R. Matheny, be restored to his office of clerk of the Circuit Court of Sangamon county.

BROWNE, Justice, concurring :

The appellants filed an information in the nature of a *Quo Warranto* against the defendant, for usurping, intruding into, and unlawfully holding and exercising the office of clerk of the Sangamon Circuit Court, from and after the 4th day of May, 1835, to the injury of the relator, who, as is alleged, was then and from and after the 14th of February, 1827, had been legally clerk of the said Court.    To this information, the defendant pleaded specially in bar, that by an act of the legislature of this State, passed 7th January, 1835, entitled "*An Act to provide a uniform mode of holding Circuit Courts*," a judge was regularly elected to said Circuit, and that he appointed the aforesaid Mordecai Mobley clerk.    To this plea the appellants demurred.   By agreement of the parties in the Court below, judg-

The People *v.* Mobley.

ment was rendered in favor of the appellee, subject to an appeal, as in other cases. And now the appellant assigns for error the insufficiency of said plea to bar the plaintiff's right of recovery. By the Constitution of this State, Article 4, section 4, it is provided as follows:

" The justices of the Supreme and inferior Courts shall hold their offices during good behavior, until the end of the first session of the General Assembly which shall be begun and held after the first day of January, 1824, at which time their commissions shall expire, and until the expiration of which time the said justices respectively shall hold Circuit Courts in the several counties, in such manner and at such times, and shall have and exercise such jurisdiction as the General Assembly shall prescribe. But ever after the aforesaid period, the justices of the Supreme Court shall be commissioned during good behavior, and the justices thereof shall not hold Circuit Courts unless required by law."

By the 6th Section, " The Supreme Court or a majority of the justices thereof, the Circuit Courts, or a majority of the justices thereof, shall respectively appoint their own clerks."

In January, 1835, the legislature repealed the act requiring the judges of the Supreme Court to hold Circuit Courts, and in the same statute required the judges of the Supreme Court to hold annually two terms of the Supreme Court at the seat of government, and appointed Circuit judges to perform that part of the duty that had been required of the judges of the Supreme Court; such as holding Circuit Courts, &c. The law withdrawing the judges of the Supreme Court from the Circuit Courts, did not destroy those Courts, but only appointed other judges to perform (in that particular only) what had been before performed by the judges of the Supreme Court. By the statute passed 13th February, 1835,(1) it is provided that " The several clerks of the Circuit Courts appointed or to be appointed, shall give bond, be qualified," &c. &c.

It is certainly competent for the legislature to impose this on the clerks of the Courts; but I cannot see where the power is given to a judge to remove a clerk when once appointed, where no charge has been preferred against him. By the statute of 1829,(2) it is provided that " The clerks of the respective Circuit Courts shall issue process," &c. &c.—they " shall keep their office at the county seats, to do and perform all the duties in their Courts which may be enjoined upon them by law," &c. and " if any clerk of a Circuit Court shall neglect or refuse to perform any of the duties enjoined upon him by law, or shall in any manner be guilty of malfeasance in office, upon proper complaint made to the Court or judge, he shall be removed from office :

(1) Acts of 1835, 171-2; Gale's Stat. 188.        (2) R. L. 152; Gale's Stat. 172.

*Provided,* that the said clerk shall nevertheless have the right of appeal to the Supreme Court, under the like conditions as are or may be prescribed by law for other cases." From the state of pleading nothing appears to show that the clerk ever violated any duty that was enjoined on him by law, or that he is guilty of malfeasance in office. I am therefore of the opinion that the judgment of the Circuit Court be reversed, and that the aforesaid Charles R. Matheny be restored to the office of clerk of the Circuit Court of Sangamon county.

SMITH, Justice, concurring:

The importance of the questions discussed and to be decided in this case, necessarily devolves on me the duty of expressing my opinion on the most leading points developed by the application. Entertaining some views not entirely in accordance with the opinion on which the judgment of the Court may be predicated, I propose to state briefly the grounds on which they are founded.

Many and different opinions have been entertained, as to the power of the Circuit Courts, and the judges, to appoint the clerks of those Courts; some supposing it a power which the Court alone could exercise, and others viewing it, also, as a personal power, attaching to the officer, as distinct from the Court.

The 6th section of the 4th article of the Constitution, which gives the power of appointment, is couched in a phraseology very peculiar, and if it be interpreted literally, would seem to admit of no doubt that the power attached, as well to the person of the officer, as to the Court itself. This section is as follows: " The Supreme Court or a majority of the justices thereof, the Circuit Courts, or the justices thereof, shall respectively appoint their own clerks." It is manifest from this language, that in asserting under it the personal right of appointment, no violence would be done to the plain and literal signification of the language used; and I am free to confess that from a casual examination of the section, I have been inclined so to consider it, and I believe I have not been singular in such opinion. The same opinion has been entertained, I am informed, by many highly intelligent legal men, and if I am not greatly misinformed, it has been practised on, and appointments are understood to have been made under such a view of the power, considering it both warranted and proper; but more mature consideration, and the possible injurious consequences which might flow from such an interpretation, have induced me to conclude that the more sound construction is, that it is not a power attaching to the person of the officer, but that the power can alone be exercised by him, as the organ of the Court; and that when the power is once exercised, and the office filled by an appointment, whether in vacation or

in term time, the incumbent cannot be displaced, except in the manner and for the causes provided by law. The office of clerk is created under and by virtue of this section of the Constitution; but it will be remarked, that while thus created, its duration is left undefined, and being so, unless its tenure be defined by law, it would, we should apprehend, be of indefinite duration, whether for life or good behaviour, might also admit of much doubt. That tenure has by the 23d section of the act of 1829,(1) regulating the Supreme and Circuit Courts, and various other acts of the legislature, been in some measure defined, and made to depend on various contingencies, and the performance of certain acts—such as renewing official bonds, keeping his office at the county seat— and has also provided for the manner of removal for acts of malfeasance. This was entirely within legislative competency, and its expediency, as well as necessity, cannot be doubted.

It will not be my purpose to enumerate with particularity the various phases which have taken place in the judicial history of the State, nor of the organization and re-organization of its courts, and the consequences which have, or may be supposed to have followed from the various acts of the legislature in reference thereto. When the Circuit Courts were first created under the Constitution, it is well understood that the judges of the Supreme Court were, as the Constitution provided, assigned by law the duty of holding Circuit Courts. That after the period limited in the Constitution, and when in December, 1824, the re-organization of the judiciary took place, they were withdrawn from that duty, and Circuit judges were created, by and in virtue of the powers contained in the 6th Article of the Constitution of the State, who were, when once created, declared by that Article, to hold their offices during good behaviour, and subject only to removal by impeachment or by address. The repealing of the law which created the Circuit Courts, of which the persons were judges, 1st January and February, 1827, however it may be supposed to have destroyed the Courts previously created in 1824, under that provision of the 1st section of the 6th Article of the Constitution, which declares " The judicial power of the State shall be vested in one Supreme Court and such inferior courts as the General Assembly shall from time to time ordain and establish," could not, in my humble judgment, have in the least affected the tenure of the office of the judge. The shield of the Constitution was placed between him and the act of destruction, and if it failed to afford the protection guaranteed by its broad and comprehensive declaration of his right, it is doubtless because he neglected to seek the shelter it afforded. If it be conceded that all inferior courts called into being under this section of the Constitution, might at all times be again destroyed, and that the

(1) R. L. 152; Gale's Stat. 172.

power again to create, necessarily implies an equal right to destroy, still it seems to me impossible to suppose that the officer, chosen under the Constitution, should be involved in the destruction.

It is not in my judgment necessary to the denial of the right of the judge to remove the relator from the office of clerk of the Circuit Court, that it should rest at all on the effect of the acts of 1827, repealing the act of 1824, under which the judges of the then Circuit Courts were chosen, and the clerks appointed; for while it is admitted that the Court created by the act of 1824, may have been destroyed and the office of clerk with it, still the Constitution preserved the official existence of the judge, and though his duties were taken away and transferred to others, his office still remained. The act then of re-organizing anew the Circuit Courts under the act of 1827, and re-assigning the Supreme Court judges to the duties of holding Circuit Courts, and their appointment of other clerks, or the re-appointment of the old ones, form no ground upon which the removal in the present case can be with propriety based.

The cases seem to me not by any means apposite. The dissimilarity of the provisions in the act of 1827, and the act of 1835, providing for a uniform mode of holding the Circuit Courts in this State, is, I think, most manifestly to be perceived, from a comparison of the language used in them. The act of 1827 professed, in open and undisguised terms, to abrogate the Circuit Courts created by the act of 1824, and the re-organization provided in the same act, referred to those Courts as having heretofore had an existence. The act of 1835 has not the most distant allusion to an abrogation of the Circuit Courts, but provides for the choice of other officers, who are to be assigned to the holding of Courts in existence, and such as should be thereafter required to be held, in the several counties of the State. It is in vain then to refer, in my opinion, to the acts of 1827, or the practice under them, in relation to the appointment of clerks, to sustain the removal of the relator in this case. The clerk could alone have been removed for some one of the causes named in the several laws already referred to, in the manner provided in the 23d section of the act of 1829.(1) It has been urged in the argument, that the 12th section of the act of the 13th Feb. 1835,(2) regulating the times of holding the Supreme and Circuit Courts, authorized the removal. I can see nothing in that section warranting such an inference, much less expressly providing therefor, or recognising the power. It is merely declaratory of the manner in which clerks appointed, or to be appointed, under the act establishing a uniform mode of holding Circuit Courts, should give bond. This was merely a provision in relation to appoint-

(1) R. L. 152; Gale's Stat. 172.　　　(2) Acts of 1835, 171-2; Gale's Stat. 188.

ments to vacancies, and Courts of counties newly organized. If it had intended to have conferred the power of removal, it would have spoken out in language not to be misunderstood.

Considering that the power of appointment under the Constitution is committed to the judges of the Court, as the organs thereof, and is not a mere personal authority to be exercised by every new incumbent, and that the tenure of the office of clerk is limited and defined by law; that the causes for which the clerk shall be removed have been also defined, and the modes of proceeding prescribed; and that the regularity of the proceedings and records of the Courts, and the duties which appertain to the office will be greatly promoted by uniformity and stability of the tenure under which the incumbents hold their offices; I feel constrained from a sense of what I am convinced upon mature reflection upon the points made, is the just and rational interpretation of the Constitution and the laws relative thereto, to concur in the judgment of the Court in favor of the relator.

*Judgment reversed.*

*Note. See* The People *v.* Field, 2 Scam.